UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Michael J. Lewis,

       Plaintiff,

           v.                         Civil Action No. 2:18-cv-123-cr-jmc

Lisa M. Menard, David Turner,
Korey Stone, Joshua Rutherford,
Joel Machado, Jane Does,
John Does,

       Defendants.

## <u>REPORT AND RECOMMENDATION</u>
(Doc. 12)

Plaintiff Michael Lewis, a prisoner proceeding *pro se*, brings this action under

42 U.S.C. § 1983 against Lisa Menard, the former Commissioner of the Vermont

Department of Corrections (the DOC); David Turner, the DOC Director of Offender

Due Process, Grievances, and Public Records; Korey Stone, the DOC Out of State

Contract Monitor; Joshua Rutherford, the Superintendent of Northern State

Correctional Facility (NSCF); Joel Machado, a Corrections Service Specialist at NSCF;

and, unnamed correctional officers in the DOC and the Pennsylvania Department of

Corrections (collectively Defendants). (Doc. 5-22 at 2.) Lewis alleges in his Complaint

that, while being housed by the Pennsylvania Department of Corrections (the

Pennsylvania DOC) pursuant to the Interstate Corrections Compact (the Compact), he

was sexually abused and harassed by unnamed Pennsylvania DOC correctional

officers. (*Id.* at 7–8, ¶ 18.) Lewis further contends that, although he reported these

alleged acts, Defendants failed to intervene and stop the sexual abuse and that, after

Lewis was transferred back to Vermont, Defendants neglected to investigate the purported abuse and to provide counseling services. (*Id.* at 8, ¶ 19; *id.* at 9–10, ¶¶ 22–24.) Lewis seeks compensatory and punitive damages (*id.* at 3, ¶¶ 10, 11), and also asks this Court for an order prohibiting the DOC from transferring Lewis to the custody of the Pennsylvania DOC in the future. (*Id.* at 4, ¶¶ 4, 5.)

Presently before the Court is Defendants' Motion to Dismiss. (*See generally* Doc. 12.) Defendants argue that Lewis's claims for injunctive relief are moot and that, to the extent Lewis seeks damages from Defendants in their official capacities, his claim for damages is barred by sovereign immunity. (*Id.* at 2.) Lewis opposes the Motion to Dismiss. (Doc. 18.) As set forth below, I recommend Lewis's Complaint be DISMISSED, without prejudice.

## Factual and Procedural Background

The scant facts in this case are primarily drawn from Lewis's Complaint (Doc. 5-22), and the documents submitted in support of his Complaint. (Docs. 5-1–5-21.) In addressing Defendants' Motion to Dismiss, the Court accepts as true the factual assertions stated in Lewis's Complaint and draws all inferences in his favor.

Lewis is an inmate in the custody of the DOC. On June 12, 2017 (Doc. 18-5 at 31), Lewis was transferred to the State Correctional Institution at Camp Hill (SCI Camp Hill), which is overseen by the Pennsylvania DOC. (Doc. 5-22 at 6–7, ¶ 14.) According to Lewis, "[f]ollowing [his] arrival within the confines of SCI Camphill, he was on a nearly daily basis subject to heinous acts of sexual abuse, harassment, and violence at the hands of multiple Jane Does and multiple John Does employed with Pennsylvania Department of Corrections." (*Id.* at 7, ¶ 18.) As support

for this allegation, Lewis has submitted copies of a grievance that he filed with the Pennsylvania DOC on September 22, 2017, alleging that a specific Pennsylvania DOC correctional officer touched Lewis's genitals inappropriately. (*See* Doc. 18-5 at 1.) The Pennsylvania DOC investigated this particular grievance and ultimately concluded that Lewis's allegations were unsubstantiated. (*Id.* at 26.)

Along with grieving a single incident of the purported abuse to the Pennsylvania DOC, Lewis asserts that he personally informed Defendants Menard, Turner, and Stone of the abuse but that those particular Defendants "failed to offer, let alone undertake[,] any prompt, meaningful, reasonably corrective action on [his] behalf." (Doc. 5-22 at 8, ¶ 19.) Ultimately, on October 27, 2017, Lewis was transferred back to Vermont and housed in NSCF. (*Id.* ¶ 20; *see also* Doc. 18-5 at 59.) There, he alleges that he continued to inform Defendants of the purported abuse that occurred at SCI Camphill and that they failed to take corrective action or to reopen an investigation into the abuse, further disturbing Lewis's health and emotional well-being. (Doc. 5-22 at 9–10, ¶¶ 22–23.) He also asserts that Defendants failed to offer him counseling or treatment services as required by the Vermont DOC Directives, causing his physical and mental health to deteriorate. (*Id.* at 10, ¶ 24; *id.* at 12, ¶ 34.)

In addition to alleging that he personally informed Defendants Menard, Turner, and Stone while the abuse was ongoing, Lewis alleges that some Defendants became personally aware of the purported abuse because of a number of grievances that Lewis submitted to the Vermont DOC after he was transferred to NSCF. (*See* Doc. 5-16; Doc. 5-17; Doc. 5-20; Doc. 5-21.) For example, Lewis asserts that Defendant Rutherford became personally aware because Lewis submitted "VT DOC Grievance

3

Form #2[—Offender/Inmate Grievance Submission Form,]" describing the abuse that
allegedly occurred at SCI Camphill and requesting that the DOC reopen the
investigation undertaken by the Pennsylvania DOC. (Doc. 5-22 at 11, ¶ 28; Doc. 5-17.)
Similarly, Lewis contends that Defendant Turner became personally aware when
Lewis filed "VT DOC Grievance Form #5[—Decision Appeal to Corrections Executive]"
(Doc. 5-22 at 11–12, ¶¶ 31, 32; Doc. 5-20) and that Defendant Menard became
personally aware when Lewis appealed using "VT DOC Grievance Form #7[—Decision
Appeal to Commissioner.]" (Doc. 5-22 at 12, ¶¶ 32–33; Doc. 5-21.) As Lewis
acknowledges, however, the grievance forms that he submitted with this Court have
not been signed, dated, or stamped by Defendants or by anyone else in the Vermont
DOC. (Doc. 5-22 at 10, ¶ 26; *id.* at 11, ¶ 28.) Lewis alleges that Defendants' failure to
respond to his grievances violated the Vermont DOC Directives and degraded his
injuries. (*Id.* at 11–12, ¶¶ 29–34.)

Lewis then brought this suit on August 13, 2018, proceeding *pro se* and *in forma
pauperis*. (Docs. 3, 5.) As described above, he claims that, despite being informed of
the abuse at SCI Camphill, Defendants failed to intervene and stop the purported
assaults and that, after Lewis was transferred back to Vermont, Defendants did not
reopen the Pennsylvania DOC investigation and did not provide Lewis with counseling
services. (Doc. 5-22 at 8–12, ¶¶ 20–34.) For these alleged injuries, Lewis seeks
compensatory and punitive damages "against each named Defendant's individual
capacity." (*Id.* at 3–4, ¶ 12.) Lewis also asks this Court for an order requiring that
Defendant Menard "never again transfer [Lewis] to the custody of Pennsylvania
Department of Corrections." (*Id.* at 4, ¶ 13.)

4

In their Motion to Dismiss, Defendants assert that Lewis's request for an injunction preventing his transfer back to the Pennsylvania DOC is moot because all Vermont inmates have been removed from the Pennsylvania DOC system, including Lewis, and the DOC does not plan to continue housing inmates with the Pennsylvania DOC. (Doc. 12 at 2.) As support for this contention, Defendants have attached an affidavit of Defendant Turner, in which he states that "all Vermont [inmates] that were housed with the Pennsylvania Department of Corrections have been moved to a facility in Mississippi." (Doc. 12-1 at 1, ¶ 2.) Defendants also assert that sovereign immunity bars any damages that Lewis seeks from Defendants in their official capacities. (Doc. 12 at 2–3.) Lewis opposes the Motion to Dismiss, arguing that his claims for injunctive relief are not moot, because he is requesting an injunction preventing Defendants from transferring him to a correctional facility located in any state outside of Vermont, including Mississippi, where the DOC is currently transferring prisoners. (Doc. 18 at 4.) Lewis does not appear to address Defendants' argument regarding sovereign immunity. (*See generally* Doc. 18.)

## Analysis

### I.    Legal Standards

#### A.    Motion to Dismiss

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also* Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

2:18-cv-00123-cr-jmc     Document 28     Filed 02/26/19     Page 6 of 21

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although this plausibility standard is not a "probability requirement," a plaintiff's complaint must allege facts that permit "more than a sheer possibility that a defendant has acted unlawfully." *Id.* In examining the facial plausibility of a claim, "the Court may consider documents attached as an exhibit [to the complaint] or incorporated by reference, documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken." *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citations omitted). After considering these sources, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Because Lewis is proceeding *pro se*, moreover, the Court must read his pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Still, Lewis's *pro se* status does not exempt him from the requirement that he "must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). As a result, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Hogan*, 738 F.3d at 515.

## B.    Section 1983

Under 42 U.S.C. § 1983, a plaintiff may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any

citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). The Supreme Court has identified two elements of a § 1983 claim: "a plaintiff must allege [(1)]the violation of a right secured by the Constitution and laws of the United States, and [(2)] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Accordingly, "[a] common law tort does not give rise to a § 1983 action unless the commission of the tort also violates a right guaranteed plaintiff under the Constitution or federal statute." *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995). Here, although Lewis does not explicitly ground his allegations in a constitutional provision, reading his Complaint broadly, the Court presumes that he alleges a violation of the Eighth Amendment.[1] *See Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) ("[S]exual abuse by a corrections officer can give rise to an Eighth Amendment claim."). With the legal standards established, I turn to Lewis's claims for relief.

---

[1] To succeed on an Eighth Amendment claim, a prisoner "must show (1) a deprivation that is objectively, sufficiently serious . . . and (2) a sufficiently culpable state of mind on the part of the defendant official." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (internal quotation marks omitted). In the prison context, courts have defined this culpability as "deliberate indifference" to the health and safety of inmates. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment." *Crawford v. Cuomo*, 796 F.3d 252, 254, 257 (2d Cir. 2015). Similarly, the Eighth Amendment also prohibits deliberate indifference to the serious mental health needs of prisoners. *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013).

7

## II.    Claims for Injunctive Relief

First, concluding that Lewis fails to plausibly allege facts sufficient to establish standing, I conclude that his claims for injunctive relief should be DISMISSED, without prejudice.

As an initial matter, the Court briefly addresses Defendants' assertion that Lewis's claims for injunctive relief are moot.  (*See* Doc. 12 at 2.)  A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)); *see also Catanzano v. Wing*, 277 F.3d 99, 107 (2d Cir. 2001).  As a general rule, however, "voluntary cessation of allegedly illegal conduct . . . does not make the case moot." *Davis*, 440 U.S. at 631 (internal quotation marks omitted).  In such a case, the case becomes moot only if "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur" and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (internal quotation marks and alteration omitted).  "The burden of demonstrating mootness is a heavy one." *Id.* (internal quotation marks omitted).

Here, Lewis originally sought an injunction prohibiting the DOC from transferring him to the Pennsylvania DOC.[2]  (Doc. 5-22 at 4, ¶ 13.)  Then, after Lewis

---

[2]  In this regard, the Court is not persuaded by Defendants' reliance on *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996).  (*See* Doc. 12 at 2.)  In that case, the plaintiff sought relief against the transferring correctional facility and the Second Circuit noted "that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." *Prins*, 76 F.3d at 506.  Here, by contrast, Lewis does not request injunctive relief against the Pennsylvania DOC, the transferring facility; instead, Lewis seeks relief against the Vermont DOC.

brought this case, the DOC moved all inmates housed with the Pennsylvania DOC to a facility in Mississippi, completing the transfer as of October 5, 2018.  (Doc. 12-1 at 1, ¶ 2.)  Relying on this fact, Defendants argue that the Court cannot grant injunctive relief because Lewis has been removed from Pennsylvania and the DOC has "no plans" to house inmates with the Pennsylvania DOC.  (*Id.*)  In response, Lewis argues that his claims are not moot because he is now requesting an order preventing the DOC from transferring him to *any* correctional facility outside of Vermont, including Mississippi.  (Doc. 18 at 4.)  Viewing these arguments in the light most favorable to Lewis, the Court notes that, although the DOC ceased housing inmates in Pennsylvania and does not currently plan to reinstate the practice, it is not entirely clear from Turner's affidavit that the DOC's decision is permanent.  Indeed, it is at least plausible that the DOC could again contract with the Pennsylvania DOC to house Vermont inmates.  Nevertheless, as discussed in detail below, the Court need not determine whether this issue is moot, because Lewis has not plausibly alleged the requisite standing to seek injunctive relief.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (concluding case was not moot, but concluding plaintiff lacked standing to seek injunctive relief).

To establish standing in federal court, a plaintiff must demonstrate that (1) he or she has suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is likely to redress the injury.  *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).  "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future."  *Id.* (citing *Lyons*,

461 U.S. at 102); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."). This "likelihood of future harm" must be "real and immediate," though it need not be certain. *Shain v. Ellison*, 356 F.3d 211, 215–16 (2d Cir. 2004). Plaintiffs bear the burden of alleging facts in their complaint sufficient to establish standing. *Amnesty Int'l USA v. Clapper*, 667 F.3d 163, 176–77 (2d Cir. 2011).

In this case, Lewis seeks an injunction banning his transfer out-of-state to prevent future sexual abuse and harassment. But Lewis does not set forth any allegations, let alone plausible ones, that he will be transferred to either the Pennsylvania DOC or a Mississippi prison facility and that he will be sexually abused and harassed at either location. *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) ("To obtain prospective relief, such as a declaratory judgment or an injunction, a plaintiff must show, *inter alia*, a sufficient likelihood that he [or she] will again be wronged in a similar way." (alteration in original) (emphasis and internal quotation marks omitted)). Accordingly, although Lewis's claims of past sexual abuse and harassment may provide a basis for the monetary damages he seeks, they do not confer standing to seek injunctive relief. *Carter v. CIOX Health, LLC*, 260 F. Supp. 3d 277, 287 (W.D.N.Y. 2017); *Safir*, 156 F.3d at 344; *Ward v. LeClaire*, No. 9:07–CV–0026 (LEK/RFT), 2007 WL 1532067, *2 (N.D.N.Y. May 24, 2007) ("Plaintiff's request for injunctive relief against future threats or harassment by inmates and/or prison officials is too speculative to meet the irreparable harm requirement.").

Given that Lewis's Complaint fails to plausibly allege standing as to his claims for injunctive relief, I recommend that the Court DISMISS Lewis's injunctive claims without prejudice. *See Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.").

## III.    Claims for Damages

I next turn to Lewis's claims for compensatory and punitive damages. Because Lewis fails to plausibly allege Defendants' personal involvement, I recommend that the Court exercise its authority under 28 U.S.C. § 1915(e)(2)(B)(ii) and sua sponte DISMISS Lewis's Complaint for failure to state a claim.

### A.    Sovereign Immunity

The Court first addresses Defendants' assertion that, "to the extent [Lewis] seeks damages from Defendants in their official capacities, his claims are barred by [the] Eleventh Amendment." (Doc. 12 at 3.) Defendants' statement is plainly correct as a matter of federal law.[3] *See Kentucky v. Graham*, 473 U.S. 159, 169, (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002). But sovereign immunity does not appear

---

[3] The Court notes that, while this case was pending, the Vermont Supreme Court held in *Zullo v. State* that "the common law doctrine of sovereign immunity does not act as a jurisdictional bar to [a] plaintiff's civil damage suit against the State alleging that a state officer deprived him [or her] of the protection from government interference guaranteed by Article 11 of the Vermont Constitution." 2019 VT 1, ¶ 31, __ Vt. __, __ A.3d __. Although not entirely clear, the Vermont Supreme Court's holding does not appear to implicate sovereign immunity under the Eleventh Amendment of the U.S. Constitution. Instead, the Vermont Supreme Court abrogated sovereign immunity only insofar as a plaintiff alleges that a state officer's actions violated Article 11 of the Vermont Constitution. *Id.* And in any case, as discussed in detail below, Lewis's failure to plausibly allege Defendants' personal involvement provides independent grounds for dismissing Lewis's Complaint.

to apply in this case because Lewis's Complaint does not seek damages against Defendants in their official capacity. Instead, Lewis asks for compensatory and punitive damages "against each named Defendants' individual capacity." (Doc. 5-22 at 3–4, ¶ 12.) Nevertheless, based on Lewis's failure to plausibly allege personal involvement, Lewis's claims seeking damages should be dismissed.

### B.    Personal Involvement

Lewis proceeds *in forma pauperis* (Docs. 1, 3); accordingly, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court may, sua sponte, dismiss the case "at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (observing court may *sua sponte* consider mandatory dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)). "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted). Personal involvement requires a tangible connection between the unlawful conduct and the defendant. *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 343 (N.D.N.Y. 2010). That tangible connection may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

12

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[4]  These categories apply equally if the defendant is a supervisor.  In other words, "[l]iability may not be premised on the *respondeat superior* or vicarious liability doctrines, . . . nor may a defendant be liable merely by his connection to the events through links in the chain of command."  *Prince v. Edwards*, 2000 WL 633382, at *6 (S.D.N.Y. May 17, 2000) (internal quotations and citation omitted).

Here, Lewis's only claim that plausibly alleges Defendants' direct involvement in a constitutional violation[5] is his statement that "[a]t no time have any of the named Defendants offered Plaintiff any counseling/screening/treatment services as mandated by multiple Vermont Department of Corrections Directives."  (Doc. 5-22 at 10, ¶ 24); *see Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (stating the Eighth Amendment prohibits deliberate indifference to a prisoner's serious mental health needs).  But aside from this conclusory statement, Lewis's

---

[4]  In *Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013), the Second Circuit recognized that "the Supreme Court's decision in *Ashcroft v. Iqbal* . . . may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations."  *Id.* at 139; *see also Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) (declining to decide the "contours of the supervisory liability test . . . after *Iqbal*").  Still, the Second Circuit has not specifically overruled *Colon*, and this Court continues to treat it as good law.  *See, e.g., Jones v. Pallito*, No. 2:14–cv–199, 2015 WL 2376347, at *5 n.9 (D. Vt. May 18, 2015).  In any event, the Court need not reach *Iqbal*'s impact on *Colon* here because no reasonable juror could find that Defendants were personally involved in Lewis's alleged abuse, even under *Colon*.  *See Shaw v. Prindle*, 661 F. App'x 16, 18 n.2 (2d Cir. 2016).

[5]  To the extent that Lewis's alleges that Defendants failed to properly investigate the alleged sexual abuse and harassment, such an allegation does not rise to the level of a separate constitutional violation because "[i]nmates do not enjoy a constitutional right to an investigation of any kind by government officials."  *Banks v. Annucci*, 48 F. Supp. 3d 394, 414 (N.D.N.Y. 2014); *see also Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) ("[T]here is no constitutional violation where the government refuses to investigate a crime.").  "In order for a constitutional violation to have occurred, the investigation itself must have resulted in a deprivation of a constitutional right."  *Jordan v. Fischer*, 773 F. Supp. 2d 255, 278 (N.D.N.Y. 2011); *see also Faison v. Hash*, No. 03–CV–6475P, 2004 WL 944523, *2–3 (W.D.N.Y. Apr. 23, 2004) (citing *Malloy v. City of New York*, No. 93 CV 8919 (SS), 1996 WL 648927, *2 (S.D.N.Y. Nov. 7, 1996) (holding that warden's alleged failure to investigate assault by correctional officer did not give rise to constitutional violation, where plaintiff failed to show that warden could have anticipated, or had other direct involvement in, the assault).

Complaint completely fails to allege that Lewis requested counseling, let alone that Defendants knowingly and intelligently denied Lewis mental health services. (*See generally* Doc. 5-22.)  Accordingly, this claim must be dismissed for lack of personal involvement.  *See Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) (dismissing claim because "[n]owhere is it alleged that these individuals knowingly and intentionally rendered improper treatment, in that they knew of and disregarded an excessive risk to plaintiff's health"); *Lewis v. Cunningham*, 483 F. App'x 617, 619 (2d Cir. 2012) ("[A] vague complaint is insufficient to permit a jury to find that a prison official's failure to act in response was deliberate indifference.").

With respect to Lewis's claims relating to the alleged sexual abuse and harassment at SCI Camp Hill, Lewis does not claim that Defendants directly participated in the sexual abuse and harassment, that Defendants created a policy of harassment and abuse, or that Defendants were grossly negligent in supervising the Pennsylvania DOC officers who allegedly committed the abuse. (*See generally* Doc. 5-22.)  Instead, viewing Lewis's Complaint in the most favorable light, his allegations principally rely on the second and fifth categories to establish personal involvement: Lewis asserts that Defendants failed to remedy the wrong after Lewis purportedly informed Defendants of the sexual abuse and harassment; and, Lewis claims that Defendants were deliberately indifferent to his constitutional rights when they failed to act on information indicating that the sexual abuse was occurring. (*See generally id*.)  Under these categories, however, Lewis's allegations are not sufficient to establish Defendants' personal involvement in the alleged sexual abuse and harassment.

14

As a general rule, for a defendant to be liable under the second and fifth categories, the defendant must become aware of the alleged unconstitutional acts while the acts are ongoing and capable of being remedied. *See Jordan v. Fischer*, 773 F. Supp. 2d 255, 278 (N.D.N.Y. 2011) ("[P]ersonal involvement based on the failure to 'remedy a wrong' after learning about it refers to failing to remedy an ongoing wrong that is capable of being addressed." (quoting *Colon*, 58 F.3d at 873)); *Colon*, 58 F.3d at 873 (stating personal involvement depends on deliberate indifference to unconstitutional acts that were occurring). Here, Lewis alleges that Defendants Machado and Rutherford became personally aware of the alleged sexual abuse after he was transferred to NSCF. (*See* Doc. 5-22 at 9–10, ¶ 23; *id.* at 11, ¶¶ 29–30.) Because Lewis alleges that they became aware after the purported abuse concluded, he has not sufficiently alleged personal involvement with respect to Machado[6] and Rutherford. *Jordan*, 773 F. Supp. 2d at 278 ("In the case of an alleged assault, finding out about the assault after the fact does not render [Defendants] liable for the constitutional violation.").

As to Defendants Stone, Turner, and Menard, Lewis states in his Complaint that "[o]n multiple occasions, [he] personally informed Menard, Turner, [and] Stone" that he was being sexually abused at SCI Camp Hill. (Doc. 5-22 at 8, ¶19.) But aside

---

[6] To the extent that Lewis premises his § 1983 claim on Machado's failure to take corrective action based on the Prison Rape Elimination Act [PREA] (*see* Doc. 5-22 at 10, ¶ 23), "this Court has unambiguously held that the PREA 'confers no private right of action,'" and, in reaching this conclusion, has stated that "[t]he PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. The statute does not grant prisoners any specific rights." *Breer v. Medor*, No. 2:12-CV-53, 2013 WL 4456896, at *6 (D. Vt. Aug. 16, 2013) (emphasis omitted) (quoting *Chinnici v. Edwards*, No. 1:07–CV-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008)).

from this conclusory statement, Lewis does not explain how or when he informed Stone, Turner, and Menard. *See Davis v. County of Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005) ("A complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal."). More importantly, neither Stone, Turner, nor Menard possessed the authority to address the alleged constitutional violations because Lewis was being housed in SCI Camp Hill pursuant to the Compact. *See Jordan*, 773 F. Supp. 2d at 278 (stating that personal involvement based on the failure to remedy a wrong requires "an ongoing wrong that *is capable of being addressed*" (emphasis added)). Under the Compact, the Vermont Supreme Court has concluded that, although the DOC retains the jurisdictional authority to reassign, transfer, or release out-of-state inmates, "transferred inmates are subject to the disciplinary authority and rules of the receiving state." *Daye v. State*, 171 Vt. 475, 481, 769 A.2d 630, 635 (2000); *see also* Vt. Stat. Ann. tit. 28, § 1604(e). As the receiving state, therefore, the Pennsylvania DOC was responsible for investigating and addressing Lewis's grievances according to the Pennsylvania DOC's own regulations. And indeed, the record indicates that the Pennsylvania DOC investigated Lewis's grievance and ultimately concluded that Lewis's allegations were unsubstantiated. (Doc. 18-5 at 26.) Moreover, to the extent that Stone, Turner, and Menard had any authority to take corrective action, the record indicates that Lewis was transferred back to Vermont on October 27, 2017 (*see id*. at 59), less than a month after he filed his grievance with the Pennsylvania DOC on September 25, 2017. (*See id*. at 1.) Put another way, the record

16

suggests that Stone, Turner, and Menard took the only action available to them under the Compact to remedy the purported wrong. *See Seifert v. Hofmann*, No. 2:08 CV 215, 2009 WL 3837189, at \*5 (D. Vt. Nov. 12, 2009) (finding no personal involvement where defendants took action to remedy the alleged wrong).

Absent the authority to mitigate the wrong, Lewis's assertion that Stone, Turner, and Menard failed to remedy the wrong amounts to a claim that they are liable simply because they sit atop the DOC hierarchy. Such a claim, relying as it does on respondeat superior, is insufficient to establish personal involvement. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) ("[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority."); *see also Malloy v. City of New York*, No. 93 CV 8919 (SS), 1996 WL 648927 at \*2 (S.D.N.Y. Nov.7, 1996) (holding that warden's alleged failure to either investigate assault by correctional officer or discipline officer did not give rise to constitutional violation where plaintiff failed to show that warden could have anticipated or had other direct involvement in the assault); *Rivera v. Lempke*, 810 F. Supp. 2d 572, 576 (W.D.N.Y. 2011) (stating "[m]ere failure to correct, or acquiescence in, a lower-level employee's violation is not enough" to establish a supervisor's personal involvement); *Smith v. Goord*, Civ. No. 9:08–CV–1364 (NAM / RFT), 2010 WL 3488148, at \*4 (N.D.N.Y. Aug. 9, 2010) (concluding plaintiff's "supervisory liability allegations amount to nothing more than a claim based on the theory of *respondeat superior,* which . . . is insufficient to state a valid claim under § 1983"); *Paterson v. Goord*, No. 9:06-CV-0211, 2008 WL 623123, at \*7 (N.D.N.Y. Mar. 4, 2008) (dismissing complaint against supervisory defendants when plaintiff's conclusory allegations failed

to implicate their personal involvement).  Because Defendants Stone, Turner, and Menard cannot be liable merely by their connection to the events "through links in the chain of command," *Prince*, 2000 WL 633382, at *6, Lewis has failed to adequately allege their personal involvement.

Similarly, Lewis has not sufficiently alleged personal involvement based on his assertion that Defendants Rutherford, Turner, and Menard became personally aware of the purported abuse when they received the grievances he filed at NSCF.  (Doc. 5-22 at 11–12, ¶¶ 28–33.)  As noted above, by the time Lewis was transferred back to Vermont the allegedly unconstitutional acts had ceased and "[p]ersonal involvement based on the failure to 'remedy a wrong'" cannot be premised on acts that have stopped.  *Jordan*, 773 F. Supp. 2d at 278.  Moreover, as Lewis acknowledges, the grievance forms that he submitted with this Court have not been signed, dated, or stamped by Defendants or by anyone else in the DOC, let alone investigated by Rutherford, Turner, or Menard.  (Doc. 5-22 at 12.)  As supervisors in the DOC, neither the mere receipt of a grievance letter nor a pro forma denial are sufficient to establish that Rutherford, Turner, or Menard had the requisite personal involvement.  *See Joyner*, 195 F. Supp. 2d at 506; *Rivera v. Goord*, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000).

Finally, with regard to Lewis's claims against multiple Jane and John Does employed with the Vermont DOC and Pennsylvania DOC, he cannot continue to maintain this action against defendants who have not been named or served.  *See Coward v. Town and Village of Harrison*, 665 F.Supp.2d 281, 300–01 (S.D.N.Y. 2009) (plaintiff "'simply cannot continue to maintain a suit against' the John Doe defendant"

18

(quoting *Kearse v. Lincoln Hosp.*, No. 07 Civ. 4730(PAC)(JCF), 2009 WL 1706554, at *3)); *Wilson v. S. Health Partners Nursing Staff*, 1:18-CV-00013-FDW, 2018 WL 1972716, at *2 (W.D.N.C. Apr. 26, 2018) (stating that, in order to sustain a § 1983 claim, a plaintiff must "identify the individuals or distinct legal entity alleged to have acted under color of state law"). Federal Rule of Civil Procedure 4 requires that a defendant be served within 90 days of filing the complaint. Fed. R. Civ. P. 4(m). The failure to serve a defendant within 90 days of filing the complaint may be a ground for dismissal of the complaint, unless good cause is shown for an extension of that time. *Id.* Here, Lewis filed the Complaint on August 13, 2018 (*see* Doc. 5), and more than 90 days have passed since that date. Accordingly, I recommend dismissal without prejudice against the unidentified defendants now, given that Lewis has had ample time to name them.

## IV.    Leave to Amend

Finally, I recommend that the Court refrain from granting Lewis leave to amend his Complaint. Although a *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted), "a district court may deny leave to amend when amendment would be futile." *Boddie v. New York State Div. of Parole*, No. 08-CV-911(KAM)(LB), 2009 WL 1033786, at *5 (E.D.N.Y. Apr. 17, 2009) (internal quotation marks omitted); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that "a futile request to replead," even by a *pro se* litigant, "should be denied"). Amendment is futile when the cause of action is substantively

19

flawed and better pleading will not cure its defects.  *Id.*; *see also Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).

Here, Lewis has not sought leave to amend his Complaint and, in any case, such a request would be futile.  With regard to his claims for injunctive relief, better pleading would not allow Lewis to plausibly allege that he will be transferred to either the Pennsylvania DOC or a Mississippi facility and be sexually abused and harassed in the future.  *See Marcavage*, 689 F.3d at 103 ("To obtain prospective relief, such as a declaratory judgment or an injunction, a plaintiff must show, *inter alia*, a sufficient likelihood that he [or she] will again be wronged in a similar way." (alteration in original) (emphasis and internal quotation marks omitted)).  As to Lewis's claims for damages, amendment would be futile because nothing in the record suggests an inference that Lewis requested mental health services or that Defendants were deliberately indifferent to his mental health needs.  Similarly, allowing an amendment would not be sufficient for Lewis to establish Defendants' personal involvement in the purported sexual abuse because Defendants did not have the authority to remedy the wrong under the Compact's terms.  Instead, to the extent that Defendants had any remedial authority, they accomplished the transfer of Lewis back to Vermont.  *Cf. Seifert*, 2009 WL 3837189, at *5.

## Conclusion

For the foregoing reasons, I recommend that the Court DISMISS Lewis's Complaint, without prejudice.  I further recommend that the Court DENY Lewis leave to amend his Complaint.

20

Dated at Burlington, in the District of Vermont, this 26th day of February 2019.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision*." Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).